UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | |
|---|---|
| In re:<br><br>JANE DANIEL<br><br>      Debtor | Chapter 7<br>Case No. 13-16365-MSH |
| VERA LEE<br><br>      Plaintiff<br><br>v.<br><br>JANE DANIEL<br><br>      Defendant | Adversary Proceeding<br>No. 14-01041 |

**MEMORANDUM OF DECISION ON THE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

In this adversary proceeding, the plaintiff, Vera Lee, a creditor of the defendant, Jane Daniel, the debtor in the main case, has moved for summary judgment on all counts of her four-count complaint. Ms. Lee seeks a judgment that the debt owed to her by Ms. Daniel be excepted from discharge under subparts (a)(2), (a)(4), and (a)(6) of Bankruptcy Code § 523 and that Ms. Daniel be denied a discharge altogether under subparts (a)(3) and (a)(4) of § 727 of the Code.[1]

**Facts and Procedural History**

The facts relevant to a determination of Ms. Lee's summary judgment motion are drawn from findings set forth in my February 23, 2017 Memorandum and Order on Debtor's

---

[1] All references to the Code or Bankruptcy Code refer to title 11 of the United States Code, 11 U.S.C § 101 *et seq.*

1

Emergency Motion to Enforce the Automatic Stay in the main case (the "Stay Ruling"), *In re Daniel*, No. 13-16365-MSH, 2017 WL 727540, at *1 (Bankr. D. Mass. Feb. 23, 2017), the findings of the jury and the judge in *Lee v. Mt. Ivy Press, L.P. & Others*, Middlesex County Superior Court, CA No. 98-2456 (opinion at 2002 WL 31482112, Mass. Super., Jan 14, 2002), as well as the Superior Court's docket in that proceeding, Ms. Lee's Statement of Undisputed Facts,[2] and pleadings in the main case of which I may take judicial notice.

Ms. Lee's claims against Ms. Daniel arose from a book publishing project involving a Holocaust survivor's memoir entitled *Misha: A Memoir of the Holocaust Years*. The subject of the memoir was Misha Defonseca, who claimed her parents were deported by the Nazis during World War II when she was a child of seven, leaving her to survive the War alone under harrowing circumstances including living in the forest while under the protection of a pack of wolves. Ms. Defonseca's incredible story[3] came to the attention of Ms. Daniel, who held herself out as an experienced book publisher and operator of a publishing company, Mt. Ivy Press, L.P.[4] Ms. Daniel, who ran her publishing enterprise out of the basement of her home in Newton,

---

[2] Massachusetts Local Bankruptcy Rule (MLBR) 7056-1 provides that D. Mass LR 56.1 is made applicable to proceedings in the bankruptcy court. Under D. Mass. LR 56.1, with respect to a motion for summary judgment, "[m]aterial facts of record set forth in the statement required to be served by the moving party will be deemed for purposes of the motion to be admitted by opposing parties unless controverted by the statement required to be served by opposing parties." Ms. Daniel filed her response to Ms. Lee's statement of undisputed material facts late and without leave of the court. Having been filed untimely, Ms. Daniel's response will not be considered and under our local rule Ms. Lee's statements are deemed admitted.

[3] During the state court litigation, it came to light that the entire story of *Misha* had been fabricated. This revelation, while shocking, was determined by the state court to have no bearing on Ms. Lee's judgment against Ms. Daniel. *See Mt. Ivy Press, LP v. Defonseca*, 78 Mass. App. Ct. 340, 351, 937 N.E.2d 501, 511 (2010).

[4] It was determined in the Middlesex Superior Court action that Mt. Ivy Press was nothing more than Ms. Daniel's alter ego and that for all purposes they were one and the same. Middlesex Superior Court Civil Docket #MICV1998-02456, attached as "Exhibit A" at Docket #1

2

Massachusetts, convinced Ms. Defonseca that she could turn her memoir into an international best-seller. Ms. Defonseca agreed to let Ms. Daniel publish her work. Ms. Daniel then enlisted Ms. Lee to work with Ms. Defonseca to ghostwrite the book, promising to give Ms. Lee co-authorship credit and put her name on the book's cover.[5]

In 1995, Ms. Daniel, Ms. Defonseca and Ms. Lee entered into a publishing agreement with respect to the creation, publication, marketing and profit sharing with respect to Ms. Defonseca's memoir. The parties agreed that Ms. Lee and Ms. Defonseca would share the copyright to the work but that Ms. Defonseca would retain exclusively the rights to the French version of her memoir. Ms. Defonseca and Ms. Lee executed their own collaboration agreement in which they agreed to create *Misha* together and share authorship credit on the book's cover.

During the process of writing and publishing *Misha*, Ms. Daniel engaged in a determined campaign to deprive Ms. Lee and Ms. Defonseca of various rights and royalties to which they were entitled under their agreements. For example, as *Misha* neared publication in April of 1997, Ms. Daniel coerced Ms. Lee, through various threats, into entering into an agreement that gave Mt. Ivy half of Ms. Lee's copyright interest in the book. At or about the same time, Ms. Daniel tricked Ms. Defonseca, who was not a native English speaker, into signing a memorandum with respect to the French version of the book granting the copyright to Mt. Ivy. Once the book was published, Ms. Daniels employed a variety of scams and schemes to deprive both Ms. Lee and Ms. Defonseca of revenues generated by the book.

When *Misha* debuted in 1997, it became a best-seller in Italy, France and Quebec, Canada. It never took off in the U.S., however. Despite Ms. Daniel's representations, relied on

---

[5] For more on the backstory of *Misha*, see *Mt. Ivy Press, L.P. v. Defonseca*, 85 Mass. App. Ct. 241, 241–46, 8 N.E.3d 302, 303–06 (2014).

3

by Ms. Lee and Ms. Defonseca, that she was an experienced and adequately capitalized publisher, she lacked both the financial wherewithal to publish sufficient copies of the book in its first U.S. printing and the marketing skill to generate the necessary publicity for the book.

The book was published without Ms. Lee's name on the cover and this last straw caused Ms. Lee to initiate the Middlesex County Superior Court lawsuit that ultimately resulted in her judgment against Ms. Daniel.

After a lengthy jury trial, on August 20, 2001, the jury rendered its verdict in favor of Ms. Lee on all of her claims against Mt. Ivy and Ms. Daniel.[6] The jury found, among other things, that Ms. Daniel had interfered with Ms. Lee's contractual relations and fraudulently induced her to give up various rights in connection with the agreements regarding the publication of *Misha*. The jury also found that Ms. Daniel had willfully and knowingly committed unfair and deceptive acts against Ms. Lee in violation of Massachusetts General Laws Chapter 93A.[7] On April 12, 2002, the superior court judge issued her findings of fact and rulings of law on Ms. Lee's Chapter 93A claims. Adopting the jury's findings, the superior court judge concluded that certain of Ms. Daniel's conduct was a "scam orchestrated by Ms. Daniel solely to withhold monies lawfully owed by Mt. Ivy to Lee and Defonseca" and that she engaged in deceptive business dealings "clearly outside the penumbra of any established concept of fairness." *Lee v. Mt. Ivy Press*, No. MICV1998-02456 (Mass. Super. Apr. 12, 2002). She elaborated:

> This court characterizes the totality of the defendants' conduct as having been infused with a high enough level of rascality to have raised an eyebrow, even to those inured to

---

[6] "In special verdicts, the jury pierced the corporate veil, found that Daniel had acted as a general partner of Mt. Ivy, and found against Daniel and Mt. Ivy on all of Lee's claims and Defonseca's cross claims," *Lee v. Mt. Ivy Press, L.P.*, 63 Mass. App. Ct. 538, 545046, 827 N.E.2d 727, 734 (2005).

[7] "Chapter 93A makes unlawful 'unfair or deceptive acts or practices in the conduct of any trade or commerce....' " *Commonwealth v. Hale*, 618 F.2d 143, 146 (1st Cir.1980) (quoting Mass. Gen. Laws ch. 93A, § 2).

4

> the 'rough and tumble' of the marketplace. *Levings v. Forbes & Wallace, Inc.* 8 Mass. App. Ct. 498, 504 (1979). Mt. Ivy Press, through Daniel, fraudulently pilfered copyrights and monies owed to two women. It set up a sham company, ignored contractual obligations, and intentionally failed to promote the Work domestically, all to defraud Defonseca and Lee of their livelihoods and gain additional copyright interests. Mt. Ivy also ignored contractual agreements with Lee, Daniel's long-time friend and neighbor, and lied to her to gain additional copyright interest in the book. Daniel also intentionally disregarded its contractual obligation to Lee, when she falsified complaints about the quality of Lee's work, in order to gain a tactical advantage. The deceptive conduct on the part of both Daniel and Mt. Ivy caused both Lee and Defonseca to act differently than they would have otherwise acted. From any vantage point, it is clear that any reasonable businessperson would find Daniel and Mt. Ivy's conduct reprehensible. Thus, each clearly violated G.L. c. 93A.

*Lee v. Mt. Ivy Press*, No. MICV1998-02456 (Mass. Super. Apr. 12, 2002).

On April 17, 2002, the Middlesex Superior Court entered judgment in favor of Ms. Lee and against Ms. Daniel in excess of $11 million. This amount was arrived at by the judge's trebling the jury's damage calculation. By the time the judgement became final on June 15, 2005, after all appeals had been exhausted and accrued interest added, the judgment had swollen to more than $21 million.

As outlined in the Stay Ruling, Ms. Daniel managed to keep Ms. Lee at bay for years, doing her utmost to evade the day of reckoning as to Ms. Lee's judgment. Finally, on October 13, 2014, having run out of further delaying tactics, Ms. Daniel filed her bankruptcy petition in this court.

On Schedule B – Personal Property of the schedules of assets and liabilities filed in support of Ms. Daniel's bankruptcy petition, Ms. Daniel listed as an asset a one-third beneficial interest in the Daniels [sic] Family Trust having an unknown value. On Schedule D – Creditors Holding Secured Claims Ms. Daniel listed Emigrant Mortgage Company twice. Both entries listed Emigrant as holding claims of $325,000 secured by mortgages but the loan account numbers were different reflecting that these were separate mortgage claims.

5

In fact, on the date of her bankruptcy filing Ms. Daniel was the beneficiary of three trusts and owed only one mortgage debt to Emigrant Mortgage Company. After being made aware of these errors by Ms. Lee's counsel, Ms. Daniel amended her Schedule B to list her beneficial interest in the three trusts and her Schedule D to reflect only a single mortgage debt to Emigrant.

On August 31, 2015, while her bankruptcy case was pending, Ms. Daniel, through the law firm of Orlando & Associates, sent a demand letter to Ms. Defonseca asserting a Chapter 93A claim against her for conduct relating to revenue generated by *Misha* from 2001 and after. Ms. Daniel's Chapter 93A claim was not listed as an asset on her schedules, nor were the schedules ever amended to reflect the claim.

In this adversary proceeding, on June 30, 2015, Ms. Lee promulgated a discovery request upon Ms. Daniel for the production of documents including personal income tax returns, personal financial statements, business records, business and personal bank statements, and business and personal income records.[8] Ms. Daniel responded late, with a single document, a 2012 federal income tax return.[9] Subsequent to responding, Ms. Daniel, through her attorney, stated in December of 2015 "…if you are able to allow me a few more days, I will put [together] and send you any of [Ms. Daniel's] financial documents that are presently in my possession…there are some bank statements that should be helpful to you in assessing the average income and expenses that [Ms. Daniel] has in relation to her business and personal needs."[10] When no further documents were forthcoming, Ms. Lee followed up with Ms. Daniel.

---

[8] "Creditor Vera Lee's First Request for Documents from Debtor/Defendant Jane Daniel," attached as "Exhibit E" at Docket #34.
[9] Ms. Daniel's 2012 Tax Return, Attached as "Exhibit F" at Docket #34.
[10] December 3, 2015 E-mail from Peter Kaplan to Frank Frisoli, attached as "Exhibit G" at Docket #34.

6

Again through counsel, Ms. Daniel replied in June of 2016 that that she had nothing further to produce as the requested documents "do not exist, or are not within [Ms. Daniel's] immediate possession....[Ms. Daniel] believes that if she previously had any of these documents, they have now been disposed of."[11]

## Summary Judgment Standard

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56, made applicable by Fed. R. Bankr. P. 7056.

A genuine issue is "one that is supported by such evidence that 'a reasonable jury, drawing favorable inferences,' could resolve [the issue] in favor of the nonmoving party." *See In re McCarthy*, 473 B.R. 485, 491 (Bankr. D. Mass. 2012) (quoting *Triangle Trading Co. v. Robroy Indus., Inc.*, 200 F.3d 1, 2 (1st Cir.1999)). A material fact is one that might affect the outcome of the case under the governing law. *See McCarthy*, 473 B.R. at 491.

The moving party in a summary judgment motion bears the initial burden of demonstrating that no genuine issue of material fact exists by pointing to materials of evidentiary quality such as affidavits or depositions that are so one-sided as to warrant judgment as a matter of law. *See Anderson v. Liberty Lobby*, 447 U.S. 242, 252 (1986); *In re Varrasso*, 37 F.3d 760, 763 (1st Cir.1994). "Only if the record, viewed in that manner and without regard to credibility determinations, reveals no genuine issue as to any material fact may the court enter summary judgment." *Cadle Co. v. Hayes*, 116 F.3d 957, 959 (1st Cir. 1997).

---

[11] June 3, 2016 E-mail from Peter Kaplan to Frank Frisoli, attached as "Exhibit "G" at Docket #34.

7

**Nondischargeability Under § 523(a)**

A creditor requesting that a debt be excluded from discharge must prove, by a preponderance of the evidence, that the particular debt falls under one of the exceptions to discharge in Code § 523(a). *Grogan v. Garner*, 498 U.S. 279, 286–91 (1991), *see also Palmacci v. Umpierrez*, 121 F.3d 781, 787 (1st Cir. 1997). To obtain a determination of nondischargeability on summary judgment, "the record must compel a determination of nondischargeability as a matter of law." *In re Porcaro*, 545 B.R. 384, 396 (1st Cir. BAP 2016) (citing *In re Tacason*, 537 B.R. at 49–50 (citations omitted)).

In her motion for summary judgment on counts I, II, and III of her complaint, under Bankruptcy Code §523(a)(2)(A), (a)(4), and (a)(6), respectively, Ms. Lee asserts that the judgment of the Middlesex Superior Court is preclusive as to this adversary proceeding with respect to the issues determined in connection with that judgment. "The doctrine of issue preclusion, also referred to as collateral estoppel, bars the relitigation of issues determined in prior court actions." *Gray v. Tacason (In re Tacason)*, 537 B.R. 41, 50 (1st Cir. BAP 2015). In considering the preclusive effect of a state court judgment, a "federal court must give to a state court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *In re Lambert*, 459 B.R. 519, 522 (Bankr. D. Mass. 2011). It has been established that "[issue preclusion] principles ... apply in discharge exception proceedings pursuant to § 523(a)." *Grogan v. Garner*, 498 U.S. 279 (1991).

Under Massachusetts law, to determine whether collateral estoppel applies "a court must answer affirmatively four questions: (1) was there a final judgment on the merits in the prior adjudication; (2) was the party against whom estoppel is asserted a party (or in privity with a party) to the prior adjudication; (3) was the issue decided in the prior adjudication identical with

8

the one presented in the action in question; and (4) was the issue decided in the prior adjudication essential to the judgment in the prior adjudication?" *Alba v. Raytheon Co.*, 441 Mass. 836, 842, 809 N.E.2d 516, 521 (2004).

### § 523(a)(2)(A)

In rendering its verdict in favor of Ms. Lee, the Middlesex Superior Court jury found, among other things, that Ms. Daniel fraudulently induced Ms. Lee to enter into certain agreements and that Ms. Daniel's conduct was willful and knowing. The jury found that Ms. Daniel's fraudulent, willful and knowing conduct caused damage to Ms. Lee.

The state trial court judge, relying on the jury's findings, made her own findings with respect to Ms. Daniel's violation of Chapter 93A. The judge "agreed with the jury's advisory conclusion that both Mt. Ivy and [Ms. Daniel] deceptively engaged in business dealings with [Ms. Lee]," and determined "that any reasonable businessperson would find [Ms. Daniel's] and Mt. Ivy's conduct reprehensible" in a way that clearly violated Chapter 93A. The judge found that Ms. Daniel's conduct was willful, knowing, and "extremely egregious," meriting an award to Ms. Lee of treble damages, the maximum allowed under the law.[12]

---

[12] In its verdict, the jury determined that the damages suffered by Ms. Lee due to Ms. Daniel's breach of contract and interference with contractual relations totaled $3,300,000. The jury did not assign dollar amounts to damages for the fraud in the inducement or the Chapter 93A counts, leaving that determination to the trial court judge. Ms. Daniel has argued that because the jury award related to the breach of contract and tort causes of action rather than the fraud or Chapter 93A violations and the trial judge merely tripled that award, Ms. Daniel did not incur liability for fraud, a predicate for nondischargeability. However, fraudulent misrepresentation and willful and knowing conduct were very much a part of the trial court judge's subsequent assessment of Chapter 93A damages. The judge noted in her decision that her award under Chapter 93A was not duplicative of the jury's awards but in addition thereto and that "the same acts may cause the same injury, or damage, under more than one theory." Thus, the final judgment in Ms. Lee's favor was predicated on findings of willful and knowing fraudulent conduct for purposes of qualifying for nondischargeability under §523.

9

The Bankruptcy Code provides in § 523(a)(2)(A) that a "discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt... for money, property, services, or an extension, renewal, or refinancing of credit, to the extend obtained by... false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." 11 U.S.C. § 523(a)(2)(A).

To establish that a debtor obtained a debt by false pretenses or false representation, a creditor most show that: (1) the debtor made a knowingly false representation or one made in reckless disregard of the truth, (2) the debtor intended to deceive, (3) the debtor intended to induce the creditor to rely upon the false statement, (4) the creditor actually relied upon the false statement, (5) the creditor's reliance was justifiable, and (6) the reliance upon the false statement caused damage. *In re Smith*, 555 B.R. 96, 104 (Bankr. D. Mass. 2016) (citing *In re Spigel*, 260 F.3d 27, 32 (1st Cir. 2001)).

> The elements under § 523(a)(2)(A) closely mirror the elements required to prove intentional misrepresentation under Massachusetts law. The one area of divergence is the level of reliance required on the part of the creditor. The U.S. Supreme Court, in *Field v. Mans*, "rejected the more demanding reasonable reliance standard, in favor of one requiring a creditor to prove that its reliance on the misrepresentation was justifiable, in order to avoid discharge of a debt under 11 U.S.C. § 523(a)(2)(A)." *In re O'Brien*, 247 B.R. at 588–89 (citing *Field v. Mans*, 516 U.S. 59, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995)) (italics in original). The Court in *Field v. Mans* identified the standard of justifiable reliance as "a matter of the qualities and characteristics of the particular plaintiff[ ] and the circumstances of the particular case" while the standard for reasonable reliance is an "application of a community standard of conduct to all cases." *Field v. Mans*, 516 U.S. at 70, 116 S.Ct. 437 (quoting Restatement (Second) of Torts § 545A (1976)).

> Whereas the distinction between justifiable and reasonable reliance is recognized in the context of § 523(a), Massachusetts law does not differentiate between the two standards and treats them interchangeably. *In re Access Cardiosystems, Inc.*, 404 B.R. 593, 648–49 n. 82 (Bankr. D. Mass. 2009) ("Although 'reasonable' and 'justifiable' reliance have been distinguished in other contexts ... neither the SJC nor the First Circuit have held that such a distinction obtains under Massachusetts common law. Rather, both the SJC and the First Circuit have generally used the terms interchangeably when discussing the reliance element of common-law fraud and negligent misrepresentation."). By incorporating a

> standard of reasonable reliance with respect to common law claims of negligent misrepresentation, intentional misrepresentation, and fraud, the Massachusetts standard of reliance for these claims is more demanding than the standard, as articulated in *Field v. Mans*, to be applied to Bankruptcy Code § 523(a)(2)(A). *See In re O'Brien*, 247 B.R. at 588–89 (noting how the U.S. Supreme Court in *Field v. Mans* rejected the "more demanding" reasonable reliance standard in favor of a justifiable reliance standard for § 523(a)(2)(A) actions).

*In re Lambert*, 459 B.R. 519, 525 (Bankr. D. Mass. 2011). Both the trial court jury's findings in rendering its verdict and the trial court judge's findings regarding the Chapter 93A claim meet §523(a)(2)(A)'s less stringent requirements for justifiable reliance.

Applying the state court's findings to the test under §523(a)(2)(A), I find that: (1) Ms. Daniel made knowingly false and fraudulent misrepresentations to Ms. Lee, (2) these representations were willful, (3) the willful misrepresentations were intended to induce Ms. Lee to join the publishing project (4) and in fact caused Ms. Lee to do so justifiably and to her detriment and (6) Ms. Lee's reliance on Ms. Daniel's deceptive conduct caused her substantial damage.

## § 523(a)(6)

With respect to §523(a)(6), which excepts from discharge any debt for "willful and malicious injury by the debtor to another entity or to the property of another entity," 11 U.S.C. § 523(a)(6), the issues decided in the state court were identical with the issues raised in this adversary proceeding relevant to a finding of nondischargeability.

> As the United States Bankruptcy Appellate Panel of the First Circuit observed in *O'Rorke v. Porcaro (In re Pocaro)*, 545 B.R. 384, 396–97 (1st Cir. BAP 2016), "[t]o except a debt from discharge under § 523(a)(6), a creditor must show: (1) the debtor injured him or his property; (2) the debtor's actions were willful; and (3) the debtor's actions were malicious." *Id.* at 396 (citing *Jones v. Svreck (In re Jones)*, 300 B.R. 133, 139 (1st Cir. BAP 2003)). "Willful," 'modifies the word "injury," meaning that for a debt to be excepted from discharge requires proof of 'a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury.' " *In re Porcaro*, 545 B.R. at 396 (quoting *Kawwaahau v. Geiger*, 523 U.S. 57, 61–62 (1998)). The Supreme Court stated that "[i]ntentional torts generally require that the actor intend 'the consequences of an act,' not simply 'the act itself.' " *Geiger*, 523 U.S. at 61–62, 118 S.Ct. 974 (citing Restatement (Second) of Torts § 8A). "Thus, a debtor who intentionally acts in a manner

11

he knows, or is substantially certain, will harm another may be considered to have intended the harm and, therefore, to have acted willfully within the meaning of § 523(a)(6)." *See McAlister v. Slosberg (In re Slosberg)*, 225 B.R. 9, 19 (Bankr. D. Me. 1998) (quoting Restatement (Second) of Torts § 8A cmt. b *Id.* (footnote omitted)).

As noted by the panel in *Porcaro*, prior to the Supreme Court's decision in *Geiger*, the United States Court of Appeals for the First Circuit determined that to establish "malice" for purposes of § 523(a)(6) required proof that the injury was caused "without just cause or excuse." [*In re Porcaro*, 545 B.R. 384, 396–97 (1st Cir. BAP 2016)](quoting *Printy v. Dean Witter Reynolds, Inc.*, 110 F.3d 853, 859 (1st Cir. 1997)). Post–*Geiger*, the *Printy* standard remains the law in this circuit with respect to the definition of malice. *Id. See also Old Republic Nat'l Title Ins. Co. v. Levasseur (In re Levasseur)*, 737 F.3d 814, 818 (1st Cir. 2013) (stating that an injury is malicious "if it was wrongful and without just cause or excuse, even in the absence of personal hatred, spite or ill-will") (citation omitted) (internal quotations omitted)."

*In re Vasa*, No. 14-12324-JNF, 2016 WL 890130, at *14 (Bankr. D. Mass. Mar. 8, 2016).

The state court jury found that Ms. Daniel injured Ms. Lee in the amount of $2,200,000 due to interference with contractual relations and in the amount of $1,000,000 due to breach of contract, and the state court judge trebled that amount under Chapter 93A. To prevail on her summary judgment claim under § 523(a)(6), Ms. Lee must demonstrate that in entering judgment against Ms. Daniel the state court judge and jury necessarily decided each of the elements to establish nondischargeability.

The tests under §523(a)(6) and Chapter 93A are not interchangeable, as "it would be possible for a state court to find a violation of [Ch.] 93A ... for behavior which lacks the characteristics of misconduct necessary to support a ... finding of nondischargeability." *In re Porcaro*, 545 B.R. 399 (1st Cir. BAP 2016) (quoting *Commonwealth v. Hale*, 618 F.2d at 147). The First Circuit has previously agreed "with the 'majority of courts that ... have concluded that a state court judgment that could have been based on reckless disregard is not the equivalent of the substantial certainty required by § 523(a)(6),' " but "this does not mean that a Ch. 93A

12

judgment may not be given preclusive effect in a § 523(a)(6) nondischargeability proceeding."

*Porcaro*, 545 B.R. at 398–99 (quoting *In re Bradley*, 466 B.R. at 588 (citing cases)).

> Chapter 93A makes unlawful " 'unfair or deceptive acts or practices in the conduct of any trade or commerce....' " *Commonwealth v. Hale*, 618 F.2d 143, 146 (1st Cir.1980) (quoting Mass. Gen. Laws ch. 93A, § 2). "Substantive liability under [Ch.] 93A 'requires a showing of conduct that (1) falls within the penumbra of some common-law, statutory, or other established concept of unfairness; (2) is immoral, unethical, oppressive, or unscrupulous; and (3) causes substantial injury to consumers or other business persons.' " McDermott v. Marcus, Errico, Emmer & Brooks, P.C., 911 F. Supp.2d 1, 99–100 (D. Mass. 2012) (citations omitted), *aff'd*, 775 F.3d 109 (1st Cir. 2014). Chapter 93A, § 9(3), allows multiple damages of from two to three times actual damages for "a willful or knowing violation of ... section two...." Mass. Gen. Laws ch. 93A, § 9(3) (emphasis added). The "willful or knowing" requirement "is directed against callous and intentional violations of the law...." *Heller v. Silverbranch Constr. Corp.*, 376 Mass. 621, 382 N.E.2d 1065, 1070 (1978). The Supreme Judicial Court has said that "a finding of 'wil[l]ful' conduct within the meaning of [Ch.] 93A is satisfied where the defendant has acted recklessly." *Kattar v. Demoulas*, 433 Mass. 1, 739 N.E.2d 246, 259 (2000) (citations omitted). On the other hand, courts equate "knowing" conduct "with intentional acts." *Id.* (citation omitted) (internal quotations omitted). "Ultimately, [Ch.] 93A ties liability for multiple damages to the degree of the defendant's culpability." *Id.* (citation omitted).

*Porcaro*, 545 B.R. at 397.

Though the standard for establishing a Chapter 93A violation may be lower than that required to establish nondischargeability under the Bankruptcy Code, the judgment against Ms. Lee in the state court satisfies the heightened standard of willfulness under §523(a)(6).

Even without taking into account the state court judge's findings under the Chapter 93A claim, simply considering Ms. Daniel's liability for the tort of interference with contractual relations establishes that the injury to Ms. Lee was committed willfully and maliciously. Ms. Daniel was found by the jury to have committed an intentional tort. As discussed in *Porcaro* this means that she was found to have intended the consequences of her act, the predicate for willfulness under §523(a)(6). Under Massachusetts law, her conduct was malicious due to the nature of the tort she committed.

13

> The tort of intentional interference with contractual relations is well established under Massachusetts law. It requires that the tortfeasor know of the contract and that he intentionally and without justification induce a breach thereof. *Anderson v. Moskovitz*, 260 Mass. 523, 157 N.E. 601 (1927); *Wheeler-Stenzel Co. v. American Window Glass Co.*, 202 Mass. 471, 89 N.E. 28 (1909); *Walker v. Cronin*, 107 Mass. 555 (1871). Although many of the Massachusetts decisions refer to malice as an element of the wrong, it is a malice which is presumed in law from the existence of the other elements. *Anderson v. Moskovitz*, 260 Mass. 523, 526, 157 N.E. 601, 603 (1927).

*In re Dubian*, 77 B.R. 332, 336 (Bankr. D. Mass. 1987)

In *Dubian*, the court was asked to determine whether a state court judgment for an injury caused by the debtor's intentional interference with the plaintiff's contractual relations satisfied the §523(a)(6) requirement of "willful and malicious injury" for purposes of invoking principles of collateral estoppel. The court found that "the 'willful and malicious' conduct required for intentional interference with contractual relations is the same type of conduct for which a discharge is denied—conduct done intentionally without just cause or excuse which necessarily causes injury." *In re Dubian*, 77 B.R. 332, 337 (Bankr. D. Mass. 1987).[13]

Applying the conclusions of the state court judge and jury to the test under §523(a)(6), I find that the injury caused by Ms. Daniel to Ms. Lee was not merely reflective of reckless disregard, but was willful and malicious, "extremely egregious," and carefully calculated to enrich Ms. Daniel through the harm caused to Ms. Lee. The state court's award of treble damages, the maximum recovery allowed under Chapter 93A, buttresses this finding.

---

[13] As discussed, the First Circuit relies on the *Printy* malice standard for the purposes of §523(a)(6), that malice requires proof that an injury was caused "without just cause or excuse." *Printy*, 110 F.3d at 859. *In re Dubian* applied the *Tinker v. Colwell*, 193 U.S. 473 (1902) malice standard, that malice is implied from "an intentional and wrongful act...under the Bankruptcy Code." However, the finding in *Dubian* that willful and malicious conduct is "conduct done intentionally without just cause or excuse which necessarily causes injury" ultimately applies the same malice standard as *Printy*.

14

§ 523(a)(4)

Section 523(a)(4) provides that: "A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt— ...for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny; ..." 11 U.S.C. § 523(a)(4). This means that Ms. Lee must prove that Ms. Daniel's debt arose while Ms. Daniel was acting in a fiduciary capacity, and that the debt arose from her fraud or defalcation. As to the first element:

> The issue of whether a party is "acting in a fiduciary capacity" within the meaning of § 523(a)(4) is one of federal law. *Petrucelli v. D'Abrosca (In re D'Abrosca)*, No. 10-062, 2011 WL 4592338, at *5 (1st Cir. BAP 2011). "In order to be acting as a fiduciary, a party must be acting pursuant to an express or technical trust, not a trust which the law implies from a contract." *Breed's Hill Ins. Agency v. Fravel (In re Fravel)*, 485 B.R. 1, 14 (Bankr. D. Mass. 2013) (citing *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 333, 55 S.Ct. 151, 79 L.Ed. 393 (1934)).

*In re Melo*, 558 B.R. 521, 556 (Bankr. D. Mass. 2016)

While Ms. Lee has alleged in her complaint in this adversary proceeding that Ms. Daniel "had a fiduciary responsibility to Ms. Lee in collecting monies from royalties with respect to the book Misha" and that Ms. Daniel "breached her fiduciary duty to Lee by diverting royalties due Lee to Mt. Ivy Press, International, a sham corporation set up and controlled by [Ms. Daniel] to defraud [Ms. Lee] and others," neither the findings in the state court action nor the summary judgment record as a whole supports such a conclusion. Therefore, Ms. Lee has failed to sustain her burden for obtaining summary judgment as to nondischargeability under §523(a)(4).

### Denial of Discharge Under §727

Discharge is the embodiment of the fresh start policy of the Bankruptcy Code. It is the bullseye of bankruptcy and while virtually all debtors aim for this target, not all hit the mark. §727 of the Bankruptcy Code enshrines a series of grounds by which a court may deny a debtor

15

her discharge. Here, Ms. Lee demands summary judgment denying Ms. Daniel's discharge under § 727(a)(3) and (4). A debtor will be denied discharge under § 727(a)(3) if she "has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case." 11 U.S.C. § 727(a)(3). Under § 727(a)(4), "[t]he court shall grant the debtor a discharge unless the debtor knowingly and fraudulently, in or in connection with the case... made a false oath or account." 11 U.S.C. § 727(a)(4).

**§727(a)(3)**

In *Harrington v. Simmons (In re Simmons)*, 525 B.R. 543 (1st Cir. BAP 2015), *aff'd*, 810 F.3d 852 (1st Cir. 2016), the United States Bankruptcy Appellate Panel for the First Circuit ruled that:

> The "purpose of § 727(a)(3) is to give creditors, the trustee and the bankruptcy court complete and accurate infohrmation concerning the debtor's affairs and to ensure that dependable information is provided so that the debtor's financial history may be traced." *Canha v. Gubellini (In re Gubellini)*, No. 09–016, 2009 WL 8466789, at *4 (1st Cir. BAP 2009) (footnote omitted) (citing *Meridian Bank v. Alten*, 958 F.2d 1226, 1230 (3d Cir.1992)). The standard for disclosure of records for purposes of § 727(a)(3) is one of "reasonableness in the particular circumstances." *Razzaboni v. Schifano (In re Schifano)*, 378 F.3d 60, 68 (1st Cir. 2004) (internal quotations and citations omitted). "[A]n impeccable system of bookkeeping" is not required; however, "the records must sufficiently identify the transactions [so] that intelligent inquiry can be made of them." *Id.* at 69 (internal quotations and citations omitted). The inquiry into the reasonableness of records may include several relevant factors such as "the education, experience, and sophistication of the debtor; the volume of the debtor's business; the complexity of the debtor's business; the amount of credit extended to the debtor or his business; and any other circumstances that should be considered in the interest of justice." *Id.* at 70 n. 3 (internal quotations and citations omitted).

*In re Simmons*, 525 B.R. 543, 547 (1st Cir. BAP 2015), *aff'd*, 810 F.3d 852 (1st Cir. 2016); *see also Salvador v. Kaplan*, No. 14-10509-JNF, 2017 WL 1364966, at *11 (Bankr. D. Mass. Apr.

16

12, 2017) (relying on the decision to articulate the purpose of and elements of proof under § 727(a)(3)).

The initial burden of proof under § 727(a)(3) is on the party seeking discharge denial. That party must prove two things: "(i) that the debtor 'concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information;' and (ii) that the recorded information was information 'from which the debtor's financial condition or business transactions might be ascertained.' " *Lassman v. Keefe (In re Keefe)*, 380 B.R. 116, 120 (Bankr. D. Mass. 2007). If the initial burden of proof is met, the burden shifts to the debtor to prove that "such act or failure to act was justified under all of the circumstances of the case." *In re Hegarty*, 400 B.R. 332, 341–42 (Bankr. D. Mass. 2008).

Ms. Lee asserts that Ms. Daniel's response to her discovery request for business records in this adversary proceeding, consisting of a single tax return, with a broken promise of additional documents to follow, establishes her failure to maintain books and records within the meaning of § 727(a)(3). I agree. Ms. Daniel's failure to produce any financial records save one tax return in response to a detailed request for production by Ms. Lee, followed by an admission, after promising to supplement production, that if she previously had additional documents "they have now been disposed of," is unreasonable and unjustified under all the circumstance of the main bankruptcy case and this adversary proceeding.

I find that Ms. Lee has satisfied her burden of proof and that Ms. Daniel's discharge should be denied under 11 U.S.C. § 727(a)(3).

### §727(a)(4)

The burden of proof is on the party seeking discharge denial under§ 727(a)(4) "to demonstrate by a preponderance of the evidence that the debtor (1) knowingly and fraudulently,

17

(2) made a false oath in or in connection with the case, (3) relating to a material fact." *Nickless v. Fontaine (In re Fontaine),* 467 B.R. 267, 271 (Bankr. D. Mass. 2012).

> A material fact under § 727(a)(4)(A) is "one that has a non-trivial effect upon the estate and creditors." *Nickless v. Fontaine (In re Fontaine),* 467 B.R. 267, 271 (Bankr. D. Mass. 2012). "The subject matter of a false oath is "material," and thus sufficient to bar discharge, if it "bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings or the existence and disposition of property." *Tully,* 818 F.2d at 111.

*In re Crawford,* 531 B.R. 275, 306–07 (Bankr. D. Mass. 2015), *subsequently aff'd,* 841 F.3d 1 (1st Cir. 2016)

The Bankruptcy Appellate Panel for the First Circuit has held that "[a] debtor's Schedules and Statement of Financial Affairs are the equivalent of a verification under oath." *In re Cogswell,* No. 10-43436-MSH, 2012 WL 2921021, at *1 (Bankr. D. Mass. July 17, 2012) (quoting *In re Warner,* 247 B.R. 24, 26 (1st Cir. BAP 2000) (citing 28 U.S.C. § 1746)).

> The requirement that the false oath be "knowingly and fraudulently" made is met "if the debtor 'knows the truth and nonetheless willfully and intentionally swears to what is false.' " *In re Sullivan,* 444 B.R. at 8 (quoting *Gordon v. Mukerjee (In re Mukerjee),* 98 B.R. 627, 629 (Bankr. D. N. H. 1989)). As the Court of Appeals for the First Circuit observed in *In re Tully,* "reckless indifference to the truth ... has consistently been treated as the functional equivalent of fraud for purposes of § 727(a)(4)(A)." 818 F.2d at 112 (quotations omitted). "Even though courts will not construe an ignorant or inadvertent omission as evidence of fraudulent intent, reckless disregard may nonetheless be found based on the 'cumulative effect of a series of innocent mistakes.' " *In re Koss,* 403 B.R. at 213. Ultimately, "[n]either the trustee nor the creditors should be required to engage in a laborious tug-of-war to drag the simple truth into the glare of daylight." *In re Tully,* 818 F.2d at 110.

*Fontaine,* 467 B.R. at 272.

In her untimely and thus disqualified response to Ms. Lee's statement of undisputed facts in support of her motion for summary judgment, Ms. Daniel stated that the Chapter 93A demand letter she sent to Ms. Defonseca evidences only that she discussed with an attorney a possible claim against Ms. Defonseca prior to her filing her Chapter 7 petition. She stated that since she

18

did not conceive of the claim until two years after filing her bankruptcy petition, it did not occur to her to advise her bankruptcy counsel of it, and that in any event the claim was valueless and was never pursued further.

Even assuming Ms. Daniel's version of the story about her Chapter 93A claim is true and I had chosen to consider it, her excuses would be of no avail. The particular moment in time when a debtor realizes she has a claim has no relevance in determining whether the claim is an asset of her bankruptcy estate. What matters is when the claim arose and here Ms. Daniel's Chapter 93A claim against Ms. Defonseca was for conduct beginning in 2001, years prior to her bankruptcy. Once Ms. Daniel "conceived" of the claim in 2015, it was her obligation to amend her schedule to include it. A "debtor has a continuing duty to assure the accuracy and completeness of schedules. Postpetition discovery of rights that actually existed at the time of filing must be addressed in the schedules. This implies a duty to amend." *In re Pick & Save, Inc.*, 478 B.R. 110, 120 (Bankr. D.P.R. 2012) (quoting *In re Searles*, 317 B.R. 368, 378 (9th Cir. BAP 2004), *aff'd*, 212 F. App'x 589 (9th Cir. 2006)).

As to Ms. Daniel's plea that her Chapter 93A claim had no value, value is not the sole determinant of materiality. *In re Sohmer*, 434 B.R. 234, 250 (Bankr. D. Mass. 2010). The "recalcitrant debtor may not escape a section 727(a)(4)(A) denial of discharge by asserting that the admittedly omitted or falsely stated information concerned a worthless business relationship or holding; such a defense is specious. It makes no difference that he does not intend to injure his creditors when he makes a false statement. Creditors are entitled to judge for themselves what will benefit, and what will prejudice, them." *Sohmer*, 434 B.R. at 250 (quoting *Chalik v. Moorefield (In re Chalik)*, 748 F.2d 616, 618 (11th Cir. 1984)).

The summary judgment record establishes and I find that Ms. Daniel swore to the accuracy of her bankruptcy schedules when in fact they were not accurate in the following respects: She failed to disclose on her Schedule B her ownership interests in two trusts and her Chapter 93A cause of action against Misha Defonseca, and she represented on her Schedule D that she owed more than double the mortgage debt to Emigrant Mortgage Company than she actually owed.

While the misstatements as to the spendthrift trusts and the mortgage debt might arguably be excused as non-material or to some degree remedied by subsequent amendment, the failure of Ms. Daniel to disclose a Chapter 93A claim she thought was valuable enough to engage counsel to pursue was neither non-material nor remedied.

I find that Ms. Lee has satisfied her burden to prove each element of § 727(a)(4)(A) and that Ms. Daniel should be denied a discharge under that section.

An order consistent with this memorandum shall enter.

At Boston, Massachusetts this 25th day of May, 2017.

By the Court,

Melvin S. Hoffman
U.S. Bankruptcy Judge

Counsel Appearing:  Frank J. Frisoli, Frank J. Frisoli, P.C.
                    Cambridge, MA
                    for Vera Lee

                    Peter R. Kaplan, Law Office of Peter R. Kaplan, P.C.
                    Salem, MA
                    for Jane Daniel